IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-2053

DEBORAH NEER and JEREMY NEER,
personally, and as next friends of TN, a minor

Plaintiffs,

v.

PARK COUNTY SCHOOL DISTRICT RE NO. 2;
ANDY FIETH and KYLE GRAFF, in their official capacities as Principal and Dean of Students, respectively, of the Park County Middle School,

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COME NOW PLAINTIFFS, Deborah Neer and Jeremy Neer (the "Neers"), personally and as next friends and parents of TN, a minor ("TN"), by and through their counsel, Klein Coté Edwards Citron LLC, for their Complaint and Jury Demand against Defendant, allege and state as follows:

### INTRODUCTION

1. This disability rights case is filed by the parents and next friends of a temporarily disabled minor girl against her school district and its responsible administrative staff, for failing to accommodate her temporary disability and for related violations under section 504 of the Rehabilitation Act ("Section 504") 29 U.S.C. § 794, *et seq*. and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

2. TN was seriously injured at her school. Injured students are entitled to equal access to education while they are recovering from their injuries under both Section 504 and the ADA.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 2 of 18

Under these legal mandates, students with such temporary disabilities cannot be denied the benefits of, or be excluded from, meaningful participation in their public education.

3.  Equal access refers to the access guaranteed under the ADA and Section 504, as described in 28 C.F.R. § 35.130(b)(1). Such access can be achieved through, among other things, reasonable modifications to policies, practices and procedures, changes in methods of administration, revisions to eligibility criteria, and ensuring services are offered in the most integrated setting appropriate to the needs of the affected student(s).

4.  Section 504 provides: "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794(a). To demonstrate a violation of Section 504, a plaintiff must show that (i) he or she is an "individual with a disability" under the terms of the Rehabilitation Act; (ii) he or she is "otherwise qualified" to receive the benefits or services sought, (iii) he or she was denied the benefits of the program "solely by reason of her or his disability"; and (iv) the program receives federal financial assistance. *Id*. "[A]ll of the operations" of "local educational agenc[ies]" are considered "program[s] or activit[ies]" covered by the Act. 29 U.S.C. § 794(b).

5.  For an individual to be eligible for protection under the ADA, he or she must have a "physical or mental impairment that substantially limits one or more major life activities…." 42 U.S.C. § 12102(1)(A). During times relevant after the Attack (defined below), TN suffered from a clinically documented severe concussion causing severe headaches and light sensitivity that limited her ability to participate in school classes and engage in computer screen time without

discomfort. These are conditions and limitations that, during their occurrences, "will, at a minimum, substantially limit major life activities," 29 C.F.R. § 1630.2(j)(3)(iii), including "learning, reading, concentrating, thinking, [and] communicating." 42 U.S.C. § 12102(2)(A). Therefore, during times relevant TN met the definition of "individuals with disabilities" within the meaning of the Act, and she was thus entitled to "meaningful access" to the benefits, services, and programs provided by her middle school. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

6. Despite their legal obligations, Defendants failed to provide equal educational access for TN following her injuries by intentionally failing to accommodate her resulting, documented temporary disability.

7. Defendants also failed to provide TN, because of her injuries, the opportunity to equally and effectively participate in and benefit from the educational services and programs offered and overseen by Defendants.

8. As a result, Plaintiffs have had to move their residence from the school district in Park County to a public school in Jefferson County that recognizes its obligations under federal law.

## JURISDICTION AND VENUE

9. Plaintiffs bring claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. and, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

10. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) as this is a civil action arising under the laws of the United States.

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 4 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 4 of 18

11.	Venue is proper for the United States District Court for the District of Colorado pursuant to 28 U.S.C § 1391 (a), (b), and (c) because the claims arose in this district and the parties reside in this district.

## PARTIES

12.	TN is a thirteen-year-old citizen of the United States who during all times relevant attended middle school at the Park County Middle School in the Defendant school district (the "Middle School").

13.	The Neers are parents and next friends of TN.

14.	Defendant Park County School District RE No. 2 (the "District") is a Colorado School District organized under article IX of the Colorado State Constitution.

15.	Defendant Andy Feith ("Feith") was an employee of the District acting as the principal of the Middle School during all times relevant to this Complaint. Feith is sued in his official capacity.

16.	Defendant Kyle Graff ("Graff") was an employee of the District acting as the Dean of Students of the Middle School during all times relevant to this Complaint. Graff is sued in his official capacity.

## FACTUAL ALLEGATIONS – TN at the Middle School.

17.	The ADA and Section 504 require Defendants to provide all eligible students suffering from temporary disabilities equal access to education by, inter alia: (1) making reasonable modifications in their policies, practices, and procedures; (2) changing methods of

4

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 5 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 5 of 18

administration; (3) revising eligibility criteria; and (4) providing an integrated setting. In the instant case, these remedial steps would have required Defendants, at a minimum to have allowed TN to modify her class activities in accordance with the recommendations of her medical professionals.

18. On October 28, 2018, TN was attacked by a fellow student (the "Assailant") at the Middle School while in class, during school hours (the "Attack"). The Attack was captured by school cameras and the Assailant was criminally charged for the incident.

19. The Attack left TN with, among other injuries, a severe concussion. TN's concussion was medically documented by CHPG High Country Primary Care medical practice in Breckenridge, Colorado ("CHPG Medical"). CHPG Medical's diagnosis documented and confirmed TN as being in a state of temporary disability with a broken nasal cavity, bruising, and a concussion that resulted in lingering diminution of her ability to fully participate in her classes and schoolwork.

20. CHPG Medical sent at least three, separate letters to the Middle School instructing that TN be given academic accommodation for her injuries (the "Letters"). The Letters are redacted and attached as <u>Exhibits, 1, 2, and 3</u>, respectively. All of these letters were ignored or largely ignored by Defendants.

21. According to CHPG Medical, the severe concussion flowing from the Attack required Defendants to make reasonable accommodation for TN while TN recovered from her temporary disability. Reasonable accommodation according to CHPG Medical included allowing TN a workload reduction, allowing her to take breaks, allowing her extra time for assignments and tests, and excusing her from the final two classes of each day until she recovered. *See* <u>Exs. 1-3</u>.

22.     CHPG Medical warned the District through the Letters that TN's symptoms included "severe daily headaches" which were expected to persist while she recovered. *See* Exs. 1-3. The Letters counseled the Middle School to "accommodate [TN] in any way possible with her school work," and advised Defendants to call if there were any questions. *See* id. CHPG's letter dated November 30, 2018 (a month following the Attack) advised Defendants that TN was still struggling with "severe, daily headaches," that the extent of TN's injuries was not yet known, and that an MRI and a neurology consultation were being scheduled. *See* Ex.2.

23.     In the months following the Attack, TN's mother, Mrs. Neer, also reached out to the Middle School teachers and administrators on numerous occasions, advising them of her continued concerns and requesting their assistance with making reasonable accommodations for TN. Mrs. Neer also expressed concern that Defendants were failing to take reasonable steps to separate TN from her Assailant in classes and school functions, exacerbating TN's condition and inflicting emotional damage.

24.     Notwithstanding all the above, following the Attack, Defendants systemically failed to fulfill their legal obligations under federal laws to TN. Defendants systemically failed in their duties pursuant to the ADA and Section 504 to make a reasonable accommodation for TN's injuries, even when requested to do so by TN's parents and medical professionals. When TN demonstrated she was having difficulty keeping up with her class assignments, teachers routinely ignored her needs, even to the point of punishing her and mocking her temporary disability, without offering any adequate accommodations.

25.     Mere weeks following the Attack, while TN was still recovering from her injuries, Defendants failed to prevent her Assailant from sitting directly behind TN in an "anti-bullying

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 7 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 7 of 18

assembly," which TN understood to be deliberate and further act of menacing by her Assailant and her group of friends against her.

26.     Defendant Graff never responded to Mrs. Neer after she expressed her concerns to him about the incident of menacing by the Assailant at the school assembly. Defendant Graff also never responded to Mrs. Neer after she forwarded to him the list of restrictions suggested by CHPG Medical, and asked for him to forward them to TN's teachers. Only three of TN's teachers ever reached out to the Neers following the Attack to discuss reasonable accommodations for TN in their classes, even after Mrs. Neer directly emailed all of them asking for their proposals and plans to make such reasonable accommodations.

27.     Apart from being allowed to occasionally excuse herself to the school nurse's office when her concussion-related headaches occurred, TN was extended no reasonable accommodations from her teachers. Notably, she was not excused from using a computer in her STEM class, and as a result of her inability to focus on its screen and directly related to her heightened light sensitivity, she received an "F" in that class from a teacher who refused to excuse her from computer work, or to give her any extensions of time, despite her multiple medical appointments.

28.     In January of 2019, TN's Assailant cornered TN while she was in the women's restroom at the Middle School, in an act that TN understood to be deliberate menacing, leaving her further scarred and anxious. At that time, three months following the Attack, the Assailant still shared four classes with TN at the Middle School; the Defendants had taken no action to separate them in any meaningful sense.

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 8 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 8 of 18

29.     In light of Defendant Graff's ongoing unresponsiveness to her emails about her daughter, on January 7, 2019, Mrs. Neer reached out directly to District Superintendent Torrez asking for his intervention. She also wrote Defendant Graff yet another email, asking for his assistance and attention to the ongoing bullying of TN by her Assailant. In her email, and verbally to Mr. Torrez, Mrs. Neer explained that she felt she had no choice except to secure a temporary restraining order against the Assailant, personally, in light of the District's ongoing failure to act. A redacted copy of Mrs. Neer's email is attached as <u>Exhibit 4</u>.

30.     On January 8, 2019, Defendant Feith responded to Mrs. Neer's email by telephone. During the call, Defendant Feith made no mention of, nor apology for, the several emails of Mrs. Neer's he had ignored over the previous months. Defendant Feith encouraged Mrs. Neer to procure the temporary restraining order against the Assailant, and told her that that would make things "easier" for the Middle School. This was the first time any District official had suggested that Mrs. Neer should take such action, leaving Mrs. Neer even more upset because of the implication that the Middle School's unresponsiveness to protect her child at the Middle School was somehow her (i.e., Mrs. Neer's) fault.

31.     Defendant Feith also explained that he would soon email a "plan" for a "special program" for the Assailant that would prevent her from having further interactions with TN at the Middle School, for the Neers' review. As of the filing of this complaint, the Neers have still received no "plan" from the Middle School or its principal relating to the Assailant, or otherwise suggesting any protections for their daughter, TN.

32.     The same day that Mrs. Neer was told by Defendant Fieth that TN would have no further contact with her Assailant at the Middle School, he pulled TN out of class during first period to

Case 1:19-cv-02053-RBJ Document 1 Filed 07/16/19 USDC Colorado Page 9 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 9 of 18

tell her that she (i.e., TN) was going to be transferred out of her own class so as to avoid her Assailant. However, Mr. Feith went on to explain this would only be the case for one of the four classes she shared her Assailant; they would continue to share the same classes for the other three. Also that same day, January 8, 2019, TN was again pulled out of class during fifth period to meet with the Middle School's guidance counselor, Mr. Fries (the "Intervention"). The Intervention as conducted by Mr. Fries was profoundly disturbing. Mr. Graff and Mr. Fieth had previously admitted to Mrs. Neer their view that the Attack was unprovoked (based on their review of the video footage). TN's understanding was that the Attack had been a premeditated attack that left her with documented serious bodily injuries.

33. Mr. Fries' "guidance" to TN in the Intervention (which neither TN nor her parents had sought or requested) was for TN to "make friends" with her Assailant, calling it "the right thing to do." He explained to TN his recommendation that it was wrong for the Middle School to try to keep TN separated from her Assailant, and that instead he would, on his own accord and initiative, take steps to set up a meeting between the families of TN and her Assailant.

34. The requirement or suggestion in this sensitive area involving the physical and mental stability of a 13-year old girl by the Middle School and its agent, Mr. Fries, that TN's family should work together with her Assailant's family to forgive the Attack and ongoing menacing, together with the suggestion that her own father was "doing the wrong thing" by trying to protect TN and keep her away from the girl who had brutally and unrepentantly attacked her just months ago, and who still took opportunities to menace her at the school, was inappropriate to say the least. Mr. Fries' "guidance" of TN coupled with Mr. Feith's announcement to the Neers that TN was going to be removed from her own classes to keep her away from the Assailant was the

9

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 10 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 10 of 18

opposite outcome from what District policies prescribed, and it aggravated the previous psychological damage from the bullying itself.

35.     The next day, January 9, 2019, the Neers withdrew TN from the Middle School. They did this to mitigate TN's damages related to the Defendants' ongoing failures to accommodate her temporary disability, and so she could be in a school program that would meet its federal obligations to afford her a reasonable accommodation for so long as her temporary disability persisted.

36.     Following TN's withdrawal from the Middle School, during the course of TN's ongoing recovery from her injuries, she came to seek treatment at Children's Hospital in Denver. Her diagnosis there as of May 15, 2019, included injury related findings of whiplash, cervicogenic headache, concussion, muscle spasms and posture complications. A copy of a redacted letter from Children's Hospital documenting these conditions is attached hereto as Exhibit 5.

**FACTUAL ALLEGATIONS – the District, the Middle School, the ADA and Section 504.**

37.     The Middle School and the District receive federal funds and are therefore covered by the Rehabilitation Act. For purposes of the Rehabilitation Act, an "individual with a disability" is defined the same as it is in the ADA. *See* 29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12101 *et seq*.

38.     The District's and Middle School's administrators', teachers' and agents' refusal to reasonably accommodate TN's temporary disability, and the Middle School's refusal to or negligence in failing to remove her Assailant from constantly menacing her in four classes and at private moments throughout the day at school in violation of its own policies, amounted to a

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 11 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 11 of 18

failure to provide meaningful access to school programs and an education, as evidenced by her receiving reduced grades in all classes and an "F" in her STEM class which was particularly computer intensive. Because "the remedies, procedures, and rights [of the Rehabilitation Act] . . . shall be available to any person aggrieved by any act or failure to act … under section 794 [Section 504 of the Rehabilitation Act] of this title" (29 U.S.C. § 794a(a)(2)), TN is entitled to raise federal claims against the School District, the Middle School, and the individuals named above for each's failure to have acted in accordance with Section 504 and the ADA.

39.     TN also has claims under the ADA. Title II of the ADA states, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove that a public entity has violated Title II of the ADA, "a plaintiff must show: (1) he [or she] is a qualified individual with a disability, (2) he [or she] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his [or her] disability." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citation and internal quotation marks omitted).

40.     The definition of "disability" under the ADA is identical to that under Section 504, and the School District, the Middle School, and their agents and employees therefore all have the same obligations to have provided TN meaningful access to services under the ADA as under the Rehabilitation Act. See 29 U.S.C. § 794(a); 42 U.S.C. § 12102. "The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [the

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 12 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 12 of 18

ADA] provides to any person alleging discrimination on the basis of disability in violation of … this title." 42 U.S.C. § 12133.

## MONETARY DAMAGES

41.     The Neers have withdrawn TN from the District and enrolled her in a different school in a different District to avoid the daily menacing by her Assailant and to ensure her temporary disability is met with reasonable accommodation.  The Neers have incurred economic damages in the form of medical bills and counseling bills, moving and relocation costs, and increased costs of travel from their new residence to their places of employment.

42.     TN's injuries were compounded by the conduct of Defendant Graff, who failed to facilitate any form of reasonable accommodation for TN's documented injuries, including her severe concussion and daily headaches. CHPG Medical's express warnings and instructions in the Letters were ignored, and none of the Letters were even included as part of TN's files when the Neers requested copies of the same from the District and the Middle School, respectively. Mrs. Neer's multiple emails to the Principal were likewise ignored, and did not appear in TN's file when the same was produced to the Neers upon their request. The Middle School's guidance counselor was not aware of <u>any</u> of these medical circumstances when he offered his emotionally damaging 'guidance' in January of 2019, three months after the attack.

43.     Reasonable estimated costs and expenses for past and future economic costs in the form of medical bills, treatment, counseling, and for psychological and social repair additional non-economic damages for past, present and future physical is to be determined, together with pre-filing statutory interest, costs, expert witness fees, and attorney fees.

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 13 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 13 of 18

## FIRST CLAIM FOR RELIEF

Violation of Americans with Disabilities Act - 42 U.S.C. § 12101, et seq.

(Brought by TN, through her next friends the Neers, and the Neers, derivatively)

44.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1-43 as if specifically alleged herein.

45.     Title II of the ADA states, in pertinent part: [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity. 42 U.S.C. § 12132.

46.     A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

47.     Defendant District was, at all times relevant to this action, and currently is a "public entity" within the meaning of Title II of the ADA.

48.     Defendant District provided and provide "services, programs and activities" including educational programs, services, and activities in their facilities.

49.     The term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. § 12102(2). A "'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Case 1:19-cv-02053-RBJ Document 1 Filed 07/16/19 USDC Colorado Page 14 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 14 of 18

50. During all times relevant, TN is or has fallen within the category of a "qualified individual[] with disabilities" within the meaning of Title II of the ADA. She has or had impairments that substantially limited a major life activity, and, thus, was entitled – with or without reasonable modification – to participate in the programs, services, and activities of the Middle School.

51. Defendants intentionally violated the rights of TN secured by Title II of the ADA and its implementing regulations. *See* 42 U.S.C. § 12134; 28 C.F.R. § 35.101 *et seq*.

52. Defendants intentionally denied TN equal access to education by failing to provide educational services, including those needed by youth with disabilities. This conduct violated, among other provisions, 28 C.F.R. § 35.130(b)(1)(i).

53. Even when educational services are offered in schools, the opportunities for disabled students to benefit from the educational services offered is not equal to the opportunities as those services offer for non-disabled students.

54. Defendants intentionally failed to provide TN services she required (because of her temporary disability) that were as effective as those services available to TN's uninjured peers in affording equal opportunity: (1) to obtain the same result, (2) to gain the same benefit, and (3) to reach the same level of achievement as her non-disabled peers. As such, the educational services offered in Defendants' facilities during times relevant was not sufficient to provide equal access to education for TN. Defendants' conduct therefore violated, among other provisions, 28 C.F.R. § 35.130(b)(1)(iii).

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 15 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 15 of 18

55. Defendants intentionally failed to make reasonable modifications to their policies, practices, and procedures even though these modifications were during all times relevant necessary to avoid discriminating against TN in violation of 28 C.F.R. § 35.130(b)(vii).

56. Specifically, Defendants failed to make reasonable modifications to their educational services to ensure that TN had equal access to education. Such reasonable modifications may have included, but were not limited to, providing breaks during the day and reduced time at her computer, as recommended by TN's medical professionals.

57. Defendants aided and perpetuated discrimination against persons with disabilities in their programs, services, or activities when they maintained policies and practices that allowed for discrimination and that permit the discrimination \ to continue unchecked against TN, in violation of 28 C.F.R. § 35.130(b)(1)(v).

58. Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to damages in an amount to be proved at trial, as well as reasonable attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 12205.

## SECOND CLAIM FOR RELIEF

Violation of Section 504 of the Rehabilitation Act of 1973 - 29 U.S.C. § 794

(TN, through her next friends the Neers, and the Neers, derivatively)

59. Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1-58, as if specifically alleged herein.

60. Section 504 provides, in pertinent part: No otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance[.] 29 U.S.C. § 794(a).

61.Defendant District was, at all times relevant to this action, and is currently, a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and Defendant District provided and provides a "program or activity" where "program or activity" is described as "all the operations of" the recipient, which includes the educational programs and activities in its facilities. 29 U.S.C. § 794(b).

62.TN was, at all times relevant to this action, and is currently, an "otherwise qualified individual[] with [a] disability[y]" within the meaning of Section 504. She has and, during times relevant, had impairments that substantially limited a major life activity, and she was entitled—with or without reasonable modification—to participate in the educational services of Defendants' school facilities.

63.Defendants violated the rights of TN secured by Section 504 and its implementing regulations. See 28 C.F.R. § 41.1.201. Their denial of educational services included their failure to have made reasonable accommodations for TN's well documented injuries.

64.Even when educational services are offered in the school, the opportunity to benefit from the educational services that are offered may not be equal to or as effective for disabled students as nondisabled students, denying an equal opportunity for participation for disabled students as compared to non-disabled students.

65.Defendants intentionally failed to provide TN with the necessary educational services because of her temporary disabilities that were as effective in affording her, as a student with a

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 17 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
Page 17 of 18

temporary disability, equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as her non-disabled peers.

66.     Defendants intentionally failed to make reasonable modifications to their policies, practices, and procedures even though such modifications were necessary to avoid discriminating against TN in violation of Section 504.

67.     Specifically, Defendants intentionally failed to make reasonable modifications to their educational services to ensure that TN, during all times relevant, had equal access to education. Such reasonable modifications should have included, but were not limited to, providing breaks during the day, reduced time at her computer, and other modifications as repeatedly recommended by TN's medical professionals.

68.     Defendants have therefore aided and perpetuated discrimination against persons with disabilities in Defendants' programs, services or activities by maintaining policies and practices that allowed for discrimination. and that permitted the discrimination of each of the co-Defendants to continue unchecked, in violation of 45 C.F.R. § 84.4(b)(1)(v). Pursuant to 29 U.S.C. § 794a Plaintiffs are entitled to damages as well as reasonable attorneys' fees and costs incurred in bringing this action under 504.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in its favor and against Defendants as follows:

1. Against Defendants on the First Claim for Relief for damages in an amount to be proved at trial;

Case 1:19-cv-02053-RBJ   Document 1   Filed 07/16/19   USDC Colorado   Page 18 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
*Neer v. Park County School District RE No. 2*
**COMPLAINT AND JURY DEMAND**
**Page 18 of 18**

2. Against Defendants on the Second Claim for Relief for damages in an amount to be proved at trial;

3. For costs, pre- and post-judgment interest and for such other and further relief as the Court deems proper; and

4. For attorney fees as allowed by statute and otherwise as the Court may allow.

**PLAINTIFFS DEMAND TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Respectfully submitted this 16th day of July, 2019.

By: /s/ original signature on file
Lance R. Coté
KLEIN COTÉ EDWARDS CITRON LLC
101 S. Mill St. Suite 200
Aspen, Colorado 81611
Telephone: (970) 925-8700
E-mail: cote@kceclaw.com
Attorney for Plaintiffs Deborah Neer and Jeremy Neer, personally, and as next friends of TN, a minor